UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
LAURA FREEMAN,

                                                                    Docket No.:

                                              Plaintiff,

                     -against-

LIBERTY COMMUNICATIONS, INC., LIBERTY                           **COMPLAINT**
COMMUNICATIONS, INC. d/b/a LIBERTY YELLOW
CAB OF BUFFALO, LIBERTY COMMUNICATIONS,
INC. d/b/a WEBR RADIO, KENMORE BROADCASTING
COMMUNICATIONS INC., KENMORE BROADCASTING
COMMUNICATIONS INC. d/b/a WEBR RADIO,
WILLIAM YUHNKE, individually and in his official
capacity, and DAVE GILIEN, individually and in his             **Plaintiff Demands a**
official capacity,                                             **Trial by Jury**

                                              Defendants.
---------------------------------------------------------------------------X

        Plaintiff, LAURA FREEMAN (hereinafter, "Freeman" or "Plaintiff"), by and through her

attorneys, THE RUSSELL FRIEDMAN LAW GROUP, LLP, complaining of Defendants

LIBERTY COMMUNICATIONS, INC. (hereinafter, "LIBERTY"), LIBERTY

COMMUNICATIONS, INC. d/b/a LIBERTY YELLOW CAB OF BUFFALO (hereinafter,

"YELLOW"), LIBERTY COMMUNICATIONS, INC. d/b/a WEBR RADIO (hereinafter,

"LIBERTY WEBR"), KENMORE BROADCASTING COMMUNICATIONS INC. (hereinafter,

"KENMORE"), KENMORE BROADCASTING COMMUNICATIONS INC. d/b/a WEBR

RADIO (hereinafter, "KENMORE WEBR"), WILLIAM YUHNKE (hereinafter, "YUHNKE"),

individually and in his official capacity, and DAVID GILIEN (hereinafter, "GILIEN"),

individually and in his official capacity (collectively, hereinafter "Defendants"), respectfully

alleges as follows:

## NATURE OF THE ACTION

1.     This is an action arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and under New York State Human Rights Law, N.Y. Executive Law § 296 (hereinafter, "NYSHRL") *et seq.*, seeking to redress employment discrimination against Plaintiff in her employment by Defendants on the basis of Plaintiff's sex/gender, for retaliation taken against Plaintiff after voicing complaints about said discrimination by Defendants, and for aiding, abetting, inciting, compelling, or coercing discriminatory and retaliatory acts forbidden by NYSHRL.

2.     This action further arises under The Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* (hereinafter, "FLSA") and New York Labor Law, Article 6 *et seq.*, (hereinafter, "NYLL") for failure to pay overtime wages, failure to pay wages or unpaid wages, failure to provide notice of pay rate, and failure to provide timely and accurate wage statements.

3.     This action further arises under principles of Tortious Interference with Prospective Economic Advantage or Business Opportunity and Defamation, for Defendants' actions to willfully interfere with Plaintiff's search for employment, and through Defendants' defamation of Plaintiff to employers in Plaintiff's chosen field, which actions have prevented Plaintiff from securing employment.

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e and 28 U.S.C. §§ 1331 and 1343.

5.     Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) on the basis that it is the judicial district in the State in which the unlawful employment practices are alleged to have been committed; it is the judicial

district in which the employment records relevant to such practice are maintained and administered; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred therein.

6.     This Court has supplemental jurisdiction over Plaintiff's New York State law claims pursuant to 28 U.S.C. § 1367 as they are so related in this action with such original federal question jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**<u>PARTIES</u>**

7.     At all times relevant, Plaintiff Laura Freeman was and is a citizen of the United States who resides in Erie County, State of New York.

8.     At all times relevant, Plaintiff Laura Freeman was employed by Defendants LIBERTY, YELLOW, LIBERTY WEBR, KENMORE, and KENMORE WEBR.

9.     At all times relevant, Defendant LIBERTY was and is a domestic business corporation organized and incorporated under the laws of the State of New York with its principal place of business located at 1580 Kenmore Avenue, Buffalo, New York 14216.

10.     At all times relevant, Defendant YELLOW was and is a domestic business corporation organized and incorporated under the laws of the State of New York with its principal place of business located at 1580 Kenmore Avenue, Buffalo, New York 14216.

11.     At all times relevant, Defendant LIBERTY WEBR was and is a domestic business corporation organized and incorporated under the laws of the State of New York with its principal place of business located at 1580 Kenmore Avenue, Buffalo, New York 14216.

12.     At all times relevant, Defendant KENMORE was and is a domestic business corporation organized and incorporated under the laws of the State of New York with its principal place of business located at 1580 Kenmore Avenue, Buffalo, New York 14216.

13.     At all times relevant, Defendant KENMORE WEBR was and is a domestic business corporation organized and incorporated under the laws of the State of New York with its principal place of business located at 1580 Kenmore Avenue, Buffalo, New York 14216.

14.     At all times relevant, Defendant YUHNKE, a male individual, was and is the owner of Defendants LIBERTY, YELLOW, LIBERTY WEBR, KENMORE, and KENMORE WEBR and is being sued in his individual and official capacity.

15.     At all times relevant, Defendant YUHNKE was one of Plaintiff's supervisors with the authority to control the terms and conditions of Plaintiff's employment.

16.     At all times relevant, Defendant GILIEN, a male individual, was and is employed by Defendants LIBERTY, YELLOW, LIBERTY WEBR, KENMORE, and KENMORE WEBR in the capacity of Chief Operating Officer (COO) and is being sued in his individual and official capacity.

17.     At all times relevant, Defendant YUHNKE, a male individual, was and is employed by Defendants in the capacity of Owner and is being sued in his individual and official capacity.

18.     Defendant YUNKE was the owner of the corporate entities named herein with the authority to control the terms and conditions of Plaintiff's employment.

19.     At all times relevant, Defendant GILIEN, a male individual, was and is employed by Defendants in the capacity of Supervisor and is being sued in his individual and official capacity.

4

20.     Defendant GILIEN was one of Plaintiff's supervisors with the authority to control the terms and conditions of Plaintiff's employment.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

21.     Plaintiff timely filed a charge of employment discrimination and retaliation against Defendants with the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC") on October 25, 2022.  The EEOC has yet to assign a charge number.

22.     Plaintiff's EEOC Charge names all of the corporate entities named herein and alleges discrimination on the basis of sex/gender and retaliation under Title VII of the Civil Rights Act of 1964.

23.     Plaintiff intends to request a Notice of Right to Sue as soon as practicable and file an Amended Complaint within ninety (90) days of receipt of said Notice of Right to Sue.

## STATEMENT OF FACTS

24.     Plaintiff is an individual female.

25.     In or around May 2017, Plaintiff was hired by Defendants LIBERTY and YUHNKE in the capacity of a spokesperson and promoter for YELLOW.

26.     In or around the end of 2019, Defendant YUHNKE bought and formed KENMORE, LIBERTY WEBR, and KENMORE WEBR.

27.     In or around December 2019, Plaintiff began working full-time for KENMORE, LIBERTY WEBR, and KENMORE WEBR in the capacity of Operations Manager, while continuing to perform her duties as a spokesperson and promoter for YELLOW.

28.     Plaintiff was employed on a full-time schedule working forty (40) hours per week; however, Defendants illegally required Plaintiff to perform at least five (5) hours of work per week above forty (40) hours without compensation.

29.     At the time of her termination, Plaintiff was paid approximately $40,000.00 annually plus benefits. Specifically, Plaintiff was paid $15 per hour when in the office, but $25 per hour when acting in the role of spokesperson.

30.     Plaintiff was qualified for each of her positions as indicated by her positive performance appraisals and evaluations.

31.     During her time employed by Defendants, Plaintiff was never disciplined, received no negative performance evaluations, was never placed on any "Performance Improvement Plan(s)," and was never consulted for her attendance.

32.     In or around September 2021, Defendant GILIEN became COO for Defendants.

33.     Simultaneous with his hire, GILIEN began to inappropriately touch Plaintiff in a sexual manner at least twice a week. For example, GILIEN would place his hands inside of Plaintiff's shirt and give her massages, to which Plaintiff would repeatedly protest. GILIEN was so bold as to touch Plaintiff in front of co-workers and Plaintiff was regularly embarrassed and forced to endure this treatment publicly. Indeed, GILIEN would routinely get physically close to Plaintiff throughout the workday and Plaintiff was humiliated on a regular basis in this fashion as her superior attempted to use his position to garner sexual favors.

34.     As another example, GILIEN would frequently engage in inappropriate conversation with Plaintiff. In particular, GILIEN, a married man, would often recount the intimate details of a sexual affair that he was having with a co-worker and recount other various sexual encounters. GILIEN would also routinely ask Plaintiff to go out for drinks with him alone.

35.     During her employment with Defendants, Plaintiff complained to Lisa Yuhnke-Palka (hereinafter, "Yuhnke-Palka"), Human Resource Director, about GILIEN's conduct on a regular basis. Specifically, Plaintiff texted and e-mailed Ms. Yuhnke-Palka numerous complaints

about GILIEN and spoke with Ms. Yuhnke-Palka over the phone about GILIEN's behavior on multiple occasions.  At least two (2) of Plaintiff's co-workers, both men, complained to Ms. Yuhnke-Palka about GILIEN's behavior toward Plaintiff.

36.    On November 15, 2021, Plaintiff was fortunate enough to be elected to the Buffalo Broadcasters Board of Directors.  This was a great honor to Plaintiff, but the moment was soured when GILIEN remarked to Plaintiff in front of the current members of the Broadcast Board of Directors, "you're so sexy."  Plaintiff was thus embarrassed in front of her new colleagues.

37.    On November 16, 2021, Plaintiff was working when GILIEN came over to her and put his hand down Plaintiff's shirt so far that his hand was in the middle of her back.  Plaintiff was intensely embarrassed given that this was in public and in full view of her colleagues.  Thus, Plaintiff pulled away and said, "What's going on with the backrubs, you need to stop."

38.    The same day Yunhke-Palka called Plaintiff and her coworkers into a meeting.  She said the person giving the backrubs needed to stop and admitted to the staff that she had seen it and failed to address it.  Upon information and belief, all of Plaintiff's coworkers knew who she was referring to, and that Plaintiff was the victim.

39.    Also, that same day, Plaintiff was demoted to "Traffic Manager" by GILIEN. Plaintiff was provided no reason, but when pressed, GILIEN was so bold as to tell Plaintiff it "wasn't anything related to your job."  YUNHNKE later told Plaintiff that he was unaware of any title change.

40.    On November 17, 2021, Plaintiff filed a written complaint of sex/gender discrimination with Yuhnke-Palka.  Following her complaint, Plaintiff was isolated and ignored at work by GILIEN and Yuhnke-Palka.  Plaintiff was caused to fear for her job despite the fact that her activity was protected.

7

41.     In or about December 2021, Defendant YUHNKE brought an erotic Santa costume to work.  He requested that Plaintiff wear said costume both at work and during the company Christmas party, stating in part: "Oh, it'd be nice if you wore this around the office."  Plaintiff objected and refused to wear the inappropriate outfit in the workplace.  Nonetheless, Plaintiff was humiliated and felt that she was being targeted by Defendants GILIEN and YUHNKE, being taken advantage of, being made the target of ridicule, and being made an item of sexual amusement and the object of torment by her superiors.

42.     On December 28, 2021, Plaintiff was threatened and bullied by GILLEN.  Plaintiff and he were discussing a commercial and confusion arose surrounding a computer issue.  Plaintiff told GILLEN he was being hostile.  GILLEN then came around the desk swearing, cornered her with his hands on either side against the desk, got in her face and began screaming and yelling, causing Plaintiff to shake in fear.  GILLEN yelling, said, "you do a great job of being a bitch, causing problems going to HR."

43.     When Plaintiff was finally able to get out of GILLEN's grasp, GILLEN then chased Plaintiff around the office and down a hall, cornered Plaintiff against a wall, began screaming in Plaintiff's face, and again began cursing Plaintiff out. Plaintiff felt scared and threatened for her safety and sought protection.

44.     At this time, YUHNKE was present in the office, saw everything going on, and did nothing.  Plaintiff then went into YUHNKE's office to seek protection, to which YUHNKE replied, "I'm on the phone and they can hear both of you yelling, get out of my office."

45.     The environment at this point was so severe that another employee got involved, separating Plaintiff and GILLEN, and put a stop to the harassment.  Plaintiff then reported

GILLEN's actions to Yuhnke-Palka. Plaintiff, rather than GILLEN, was instructed by YUHNKE to go home and "relax."

46.     The following day, December 29, 2021, Plaintiff received an e-mail at 9:00 A.M. informing her that if she did not return to the office that she would be considered to have resigned, despite Plaintiff having available time off and having just had a traumatic experience in the office the previous day.  Plaintiff was terminated the same day from her employment by Defendants.

**FLSA & NYLL Allegations**

47.     While employed by Defendants, Plaintiff was not provided wage statements.

48.     During her time employed full-time by Defendants, Plaintiff was regularly expected to work in excess of forty (40) hours a week without pay.  In particular, Plaintiff worked approximately five (5) unpaid overtime hours a week from December 2019 onward, equaling approximately five hundred (500) hours of unpaid overtime.

49.     Beginning on or about April 24, 2021, Plaintiff was absent from work for fourteen (14) days to care for a family member.  However, Defendants required Plaintiff to perform approximately two (2) hours of work each day without compensation, despite the fact that Plaintiff's child was in intensive care at a hospital.

50.     Beginning on or about August 25, 2021, Plaintiff was absent from work for approximately seven (7) days to care for a family member. Again, Defendants required Plaintiff to perform approximately two (2) hours of work each day without compensation.

51.     Beginning on or about November 30, 2021, Plaintiff was absent from work for approximately seven (7) days to care for a family member; and again, Defendants required Plaintiff to perform approximately two (2) hours of work each day, and without compensation.

**Tortious Interference with Contractual Relations and Defamation Allegations**

52.     Plaintiff works in radio.  This industry is small, and reputation is important to a career in the field, in part because employers are geographically spread due to the nature of the business.

53.     Since leaving Defendants' employ, Plaintiff has been unable to secure employment because of YUHNKE's interference with Plaintiff's job prospects and defamatory statements to employers in Plaintiff's chosen industry.  Thus, Defendants have engaged in tortious interference with contractual relations and defamation resulting in a disruption of Plaintiff's job search and employment prospects.  Upon information and belief, employees at Defendants' place of business have witnessed this conduct.

54.     Upon information and belief, Defendants' termination of Plaintiff was motivated by unlawful discrimination based on sex/gender and/or disability and was retaliatory in nature, in part due to Plaintiff's filing of protected complaints regarding discrimination and hostile work environment.

55.     Further, Defendants' actions were willful and/or malicious.

56.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered and continues to suffer loss of income, loss of future income and benefits, and other forms of compensation, including but not limited to, past and future salary increases and other emoluments of employment, emotional distress, pain and suffering, mental anguish, and other non-pecuniary losses, all to Plaintiff's damage.

## AS AND FOR A FIRST CAUSE OF ACTION
*Sex/Gender Discrimination in Violation of*
*Title VII of the Civil Rights Act of 1964*

57.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

58.     Defendants' acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her sex/gender in violation of 42 U.S.C. Section 2000e *et seq*.

59.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses, all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

## AS AND FOR A SECOND CAUSE OF ACTION
*Hostile Work Environment in Violation of*
*Title VII of the Civil Rights Act of 1964*

60.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

61.     Defendants' acts, practices, and policies described herein constitute severe and pervasive harassment on the basis of Plaintiff's sex/gender which created a hostile work environment in violation of 42 U.S.C. § 2000e *et seq*.

62.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses, all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

### AS AND FOR A THIRD CAUSE OF ACTION
*Retaliation in Violation of*
*Title VII of the Civil Rights Act of 1964*

63.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

64.     Plaintiff engaged in protected activity by lodging one or more complaints of discrimination/hostile work environment with Defendants based on her sex/gender.

65.     Defendants were on notice of Plaintiff's protected activity at, around, or shortly after the date of Plaintiff making the complaints. Defendants failed to investigate and remedy Plaintiff's multiple complaints as the discrimination continued unabated.

66.     In retaliation for her complaints of discrimination, Plaintiff was immediately demoted to "Traffic Manager" on November 16, 2021 and terminated approximately one (1) month later on December 29, 2021.

67.     Defendants' acts, practices, and policies described herein constitute unlawful retaliation against Plaintiff for engaging in protected activity in violation of 42 U.S.C. § 2000e *et seq*.

68.     Defendants' actions would dissuade an individual of reasonable firmness from making or supporting a claim of violation of civil rights and would have an overall chilling effect.

69.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

### AS AND FOR A FOURTH CAUSE OF ACTION
*Sex/Gender Discrimination in Violation of*
*New York State Human Rights Law*

70.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

71.     Defendants' acts, practices, and policies described herein constitute intentional discrimination against Plaintiff on the basis of her sex/gender in violation of New York Executive Law § 296 *et seq*.

72.     Individual Defendants aided and abetted the discriminatory and retaliatory conducts described herein.

73.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-

pecuniary losses all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

### AS AND FOR A FIFTH CAUSE OF ACTION
*Hostile Work Environment in Violation of*
*New York State Human Rights Law*

74.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

75.     Defendants' acts, practices, and policies described herein created a hostile work environment on the basis of Plaintiff's sex/gender in violation of New York Executive Law § 296, *et seq*.

76.     Individual Defendants aided and abetted the discriminatory conducts described herein by encouraging, condoning, and/or approving such behavior.

77.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

### AS AND FOR A SIXTH CAUSE OF ACTION
*Retaliation in Violation of*
*New York State Human Rights Law*

78.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

79.     Plaintiff engaged in protected activity by lodging one or more complaints of discrimination/hostile work environment with Defendants based on her sex/gender.

80.     Defendants were on notice of Plaintiff's protected activity at, around, or shortly after the date of Plaintiff making the complaints. Defendants failed to investigate and remedy Plaintiff's multiple complaints as the discrimination continued unabated.

81.     In retaliation for her complaints of discrimination, Plaintiff was immediately demoted to "Traffic Manager" on November 16, 2021 and terminated approximately one (1) month later on December 29, 2021.

82.     Defendants' acts, practices, and policies described herein constitute unlawful retaliation against Plaintiff for engaging in protected activity in violation of New York Executive Law § 296 *et seq*.

83.     Defendants' actions would dissuade an individual of reasonable firmness from making or supporting a claim of violation of civil rights and would have an overall chilling effect.

84.     Individual Defendants aided and abetted the discriminatory conducts described herein by encouraging, condoning, and/or approving such behavior.

85.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
*Failure to Pay Overtime Wages in Violation of*
*The Fair Labor Standards Act of 1938*

86.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

87.     Plaintiff was not exempt from federal law wage provisions. Thus, the overtime wage provisions of the FLSA and its supporting regulations apply to Defendants and Plaintiff.

88.     Defendants willfully failed to pay Plaintiff's premium overtime at a rate of time and one-half her regular hourly rate for all hours worked in excess of forty (40) hours per workweek. Moreover, Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

89.     Defendants' failure to pay Plaintiff her minimum guaranteed cash compensation was in violation of the FLSA.

90.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff is entitled to recover from Defendants the unpaid overtime wages, liquidated damages, pre- and post-judgment interest, as well as reasonable attorneys' fees and costs of the action, all in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
*Unpaid Wages in Violation of*
*The Fair Labor Standards Act of 1938*

91.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

92.     Plaintiff was not exempt from federal law wage provisions. Thus, the unpaid wage provisions of the FLSA and its supporting regulations apply to Defendants and Plaintiff.

93.     Defendants willfully failed to pay Plaintiff's regular hourly rate for all hours worked per workweek.

94.     Defendants willfully failed to pay Plaintiff for all hours worked. Moreover, Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

95.     Defendants' failure to pay Plaintiff her minimum guaranteed cash compensation was in violation of the FLSA.

96.     As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees.

## AS AND FOR A NINTH CAUSE OF ACTION
### *Failure to Pay Overtime Wages in Violation of*
### *New York Labor Law, Article 6*

97.     Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

98.     Plaintiff was not exempt from state law wage provisions. Thus, the overtime wage provisions of NYLL and its supporting regulations apply to Defendants and Plaintiff.

99.     Defendants willfully failed to pay Plaintiff's premium overtime at a rate of time and one-half her regular hourly rate for all hours worked in excess of forty (40) hours per workweek. Moreover, Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

100.    Defendants' failure to pay Plaintiff her minimum guaranteed cash compensation was in violation of NYLL.

101.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff is entitled to recover from Defendants the unpaid overtime wages, liquidated damages, pre- and post-judgment interest, as well as reasonable attorneys' fees and costs of the action, all in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees.

### AS AND FOR A TENTH CAUSE OF ACTION
*Unpaid Wages in Violation of*
*New York Labor Law, Article 6*

102.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

103.    Plaintiff was not exempt from state law wage provisions. Thus, the unpaid wage provisions of NHLL and its supporting regulations apply to Defendants and Plaintiff.

104.    Defendants willfully failed to pay Plaintiff's regular hourly rate for all hours worked per workweek.

105.    Defendants willfully failed to pay Plaintiff for all hours worked. Moreover, Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff.

106.    Defendants' failure to pay Plaintiff her minimum guaranteed cash compensation was in violation of NYLL.

107.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### *Willful Misclassification of an Employee in Violation of*
### *The Fair Labor Standards Act of 1938*

108.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

109.    Plaintiff was not exempt from state law wage provisions. Thus, the misclassification of employees' provisions of the NYLL and its supporting regulations apply to Defendants and Plaintiff.

110.    At all times relevant herein, Defendants willfully engaged in a continuing pattern and practice of willfully misclassifying Plaintiff as an exempt employee.

111.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff is entitled to recover from Defendants civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### *Willful Misclassification of an Employee in Violation of*
### *New York Labor Law, Article 6*

112.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

113.    Plaintiff was not exempt from federal law wage provisions. Thus, the misclassification of employees' provisions of the FLSA and its supporting regulations apply to Defendants and Plaintiff.

114.    At all times relevant herein, Defendants willfully engaged in a continuing pattern and practice of willfully misclassifying Plaintiff as an exempt employee.

115.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff is entitled to recover from Defendants civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### *Failure to Provide Timely and Accurate Wage Statements in Violation of*
### *New York Labor Law, Article 6*

116.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

117.    With every payment of wages, Defendants failed to furnish to Plaintiff a wage statement that included: employer's name, address, and phone number; employee's name; dates covered by payment (pay period); basis of payment (hourly, salary, commission, etc.); rates paid (regular and overtime); and hours worked (regular and overtime).

118.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff is entitled to recover from Defendants civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### *Failure to Provide Notice of Pay Rate in Violation of*
### *New York Labor Law, Article 6*

119.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

120.    Defendants failed to furnish Plaintiff when she was first hired and by December of each year, until 2022, in English and in the language identified by her as the primary language, with a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

121.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff is entitled to recover from Defendants civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
### *Tortious Interference with Contractual Relations,*
### *Prospective Economic Advantage, or Business Opportunity*

122.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

123.    Plaintiff has already and/or attempted to enter into a contract of employment with employers in her industry, thereby seeking economic advantage and/or business opportunities.

124.    Defendants had knowledge of Plaintiff's attempts to enter into a contract of employment with employers in her industry.

125.    Defendants maliciously and intentionally prevented Plaintiff from entering into contracts of employment with potential employers in her industry and deprived Plaintiff of economic advantage or business opportunity.

126.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff is entitled to recover from Defendants liquidated damages, pre- and post-judgment interest, as well as reasonable attorneys' fees and costs of the action, all in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00).

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
### *Slander*

127.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

128.    Defendants made false "factual" statements as set forth herein.

129.    Defendants' "factual" statements set forth herein were false and pertained to Plaintiff.

130.    Defendants' "factual" statements set forth herein were false and published to third party(ies) by Defendants.

131.    Defendants' "factual" statements set forth herein were false and exposed Plaintiff to public contempt and/or ridicule and/or disgrace and/or induced an evil opinion of Plaintiff in the minds of right-thinking persons and/or deprived Plaintiff of her potential employment.

132.    Defendants were aware that the "factual" statements set forth herein were false at the time that they were uttered.

133.    Defendants intentionally made the false statements set forth herein.

134.    Defendants recklessly made the false statements set forth herein.

135.    Defendants negligently made the false statements set forth herein.

136.    Defendants maliciously and intentionally made the false statements set forth herein.

137.    Plaintiff was damaged as a result of Defendants' publication of the false statements set forth herein.

138.    As a result of the foregoing, Defendants are liable to Plaintiff for damages in an amount to be determined at trial for slander.

<u>**AS AND FOR A SEVENTEENTH CAUSE OF ACTION**</u>
<u>*Slander Per Se*</u>

139.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

140.    Defendants made false "factual" statements as set forth herein.

141.    Defendants' "factual" statements set forth herein were false and pertained to Plaintiff.

142.    Defendants' "factual" statements set forth herein were false and published to third party(ies) by Defendants.

143.    Defendants' "factual" statements set forth herein were false and exposed Plaintiff to public contempt and/or ridicule and/or disgrace and/or induced an evil opinion of Plaintiff in the minds of right-thinking persons and/or deprived Plaintiff of her potential employment.

144.    Defendants were aware that the "factual" statements set forth herein were false at the time that they were uttered.

145.    Defendants intentionally made the false statements set forth herein.

146.    Defendants recklessly made the false statements set forth herein.

147.    Defendants negligently made the false statements set forth herein.

148.    Defendants maliciously and intentionally made the false statements set forth herein.

149.    Plaintiff was damaged as a result of Defendants' publication of the false statements set forth herein.

150.    As a result of the foregoing, Defendants are liable to Plaintiff for damages in an amount to be determined at trial for slander.

151.    Plaintiff suffered pecuniary as well as non-pecuniary loss as a result of Defendants' publication of the false statements set forth herein.

152.    As a result of the foregoing, Defendants are liable to Plaintiff for damages in an amount to be determined at trial for slander.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION
### *Libel*

153.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

154.    Defendants made false "factual" statements as set forth herein.

155.    Defendants' "factual" statements set forth herein were false and pertained to Plaintiff.

156.    Defendants' "factual" statements set forth herein were false and published to third party(ies) by Defendants.

157.    Defendants' "factual" statements set forth herein were false and exposed Plaintiff to public contempt and/or ridicule and/or disgrace and/or induced an evil opinion of Plaintiff in the minds of right-thinking persons and/or deprived Plaintiff of her potential employment.

158.    Defendants were aware that the "factual" statements set forth herein were false at the time that they were uttered.

159.    Defendants intentionally made the false statements set forth herein.

160.    Defendants recklessly made the false statements set forth herein.

161.    Defendants negligently made the false statements set forth herein.

162.    Defendants maliciously and intentionally made the false statements set forth herein.

163.    Plaintiff was damaged as a result of Defendants' publication of the false statements set forth herein.

164.    As a result of the foregoing, Defendants are liable to Plaintiff for damages in an amount to be determined at trial for libel.

## AS AND FOR A NINETEENTH CAUSE OF ACTION
### *Libel Per Se*

165.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

166.    Defendants made false "factual" statements as set forth herein.

167.    Defendants' "factual" statements set forth herein were false and pertained to Plaintiff.

168.    Defendants' "factual" statements set forth herein were false and published to third party(ies) by Defendants.

169.    Defendants' "factual" statements set forth herein were false and exposed Plaintiff to public contempt and/or ridicule and/or disgrace and/or induced an evil opinion of Plaintiff in the minds of right-thinking persons and/or deprived Plaintiff of her potential employment.

170.    Defendants were aware that the "factual" statements set forth herein were false at the time that they were uttered.

171.    Defendants intentionally made the false statements set forth herein.

172.    Defendants recklessly made the false statements set forth herein.

173.    Defendants negligently made the false statements set forth herein.

174.    Defendants maliciously and intentionally made the false statements set forth herein.

175.    Plaintiff was damaged as a result of the Defendants' publication of the false statements set forth herein.

176.    As a result of the foregoing, Defendants are liable to Plaintiff for damages in an amount to be determined at trial for libel.

177.    Plaintiff suffered pecuniary as well as non-pecuniary loss as a result of Defendants' publication of the false statements set forth herein.

178.    As a result of the foregoing, Defendants are liable to Plaintiff for damages in an amount to be determined at trial for libel.

## AS AND FOR A TWENTIETH CAUSE OF ACTION
### *Intentional Infliction of Emotional Distress*

179.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

180.    Defendants, through the aforementioned conduct, acted with extreme and outrageous conduct that would shock the conscience of a reasonable person. This conduct was atrocious and transcended all bounds of decency, such that this conduct would be utterly intolerable in a civilized society.

181.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees.

## AS AND FOR A TWENTY-FIRST CAUSE OF ACTION
### *Negligent Infliction of Emotional Distress*

182.    Plaintiff repeats, re-iterates, and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

183.    Defendants' negligence caused Plaintiff to suffer emotional distress.

184.    Defendants owed a duty to Plaintiff. Specifically, Defendants knew, or should have known, that the failure to exercise due care in their duties to supervise their employees and to maintain a safe working environment including, but not limited to, a working environment free

27

from racial discrimination and the dangers thereof, as well as to provide channels for redress of the foregoing without retaliation or the threat thereof, would cause emotional distress to Plaintiff and other employees.

185.    Defendants breached this duty and either unreasonably endangered the physical and mental safety of Plaintiff or caused Plaintiff to fear for her safety by permitting or perpetrating the acts of discrimination, retaliation, and other practices described herein.

186.    Defendants' actions constitute conduct so extreme and outrageous in degree and character as to go beyond all possible bounds of decency.

187.    Defendants' actions can be regarded as atrocious and utterly intolerable in a civilized society.

188.    As a direct and proximate consequence of Defendants' unlawful conduct as described above, Plaintiff has suffered loss of income, loss of future income and pension benefits, and other forms of compensation including, but not limited to, past and future salary increases and other emoluments of employment, emotional distress and suffering, mental anguish, and other non-pecuniary losses all to Plaintiff's damage in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Laura Freeman respectfully requests judgment against Defendants, jointly and severally, as follows:

A.    Under the First Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

B.     Under the Second Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

C.     Under the Third Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

D.     Under the Fourth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages and attorney's fees;

E.     Under the Fifth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, and attorney's fees;

F.     Under the Sixth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, and attorney's fees;

G.     Under the Seventh Cause of Action, in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees;

H.     Under the Eighth Cause of Action, in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees;

I.     Under the Ninth Cause of Action, in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees;

J.     Under the Tenth Cause of Action, in an amount to be determined at trial, plus liquidated damages, punitive damages, statutory damages, costs, and attorney's fees;

K.      Under the Eleventh Cause of Action, for civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees;

L.      Under the Twelfth Cause of Action, for civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees;

M.      Under the Thirteenth Cause of Action, for civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees;

N.      Under the Fourteenth Cause of Action, for civil penalties and fines, plus liquidated damages, statutory damages, costs, and attorney's fees;

O.      Under the Fifteenth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00);

P.      Under the Sixteenth Cause of Action, in an amount to be determined at trial;

Q.      Under the Seventeenth Cause of Action, in an amount to be determined at trial;

R.      Under the Eighteenth Cause of Action, in an amount to be determined at trial;

S.      Under the Nineteenth Cause of Action, in an amount to be determined at trial;

T.      Under the Twentieth Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus punitive damages, and attorney's fees;

U.      Under the Twenty-first Cause of Action, in the amount of ONE MILLION DOLLARS ($1,000,000.00) plus attorney's fees;

V.      For compensatory damages (including but not limited to back pay, front pay, and emotional distress damages) in an amount to be determined at trial but in no event less than ONE MILLION DOLLARS ($1,000,000.00);

W.      For all pre-judgment interest and post-judgment interest available under law;

30

X.      For the costs and disbursements; and

Y.      Such other and further relief as the Court deems necessary, just, and proper.

Dated: Garden City, New York
       December 28, 2022

Respectfully Submitted,
**THE RUSSELL FRIEDMAN LAW GROUP, LLP**
*Attorneys for Plaintiff, Laura Freeman*

By:     /s/*Steven R. Filosa*
        Steven R. Filosa, Esq.
        400 Garden City Plaza, Suite 500
        Garden City, New York 11530
        Tel: 516.355.9696
        Email: sfilosa@rfriedmanlaw.com